IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
CHESTER CARROLL,              )
                              )
        Plaintiff,            )
                              )        CIVIL ACTION NO.
        v.                    )        2:11cv1037-MHT
                              )             (WO)
TEXAS INSTRUMENTS, INC.,      )
                              )
        Defendant.            )
```

OPINION AND ORDER

Plaintiff Chester Carroll, an Alabama resident, brought this patent-infringement suit against defendant Texas Instruments, Inc. ("TI"), which has moved to transfer the venue of this action from the Middle District of Alabama to the Northern District of Texas. Jurisdiction is proper pursuant to 28 U.S.C. § 1338(a). For the reasons that follow, TI's transfer motion will be denied.

I.

Carroll is a resident of Camp Hill, in Tallapoosa County, Alabama (which is located in the Middle District of Alabama), and the inventor and owner of two patents. He developed these two patents primarily in Tallapoosa County during his time as a college professor at the University of Alabama and Auburn University and as president of a military academy in Camp Hill. Carroll alleges that TI directly and indirectly infringed his patents through the manufacture and sale of 23 analog-to-digital converters ("ADCs"), which fall into two categories--the "High Speed ADC" accused products and the "Precision ADC" accused products.

TI is a Delaware corporation with its principal place of business in Dallas, Texas (which is located in the Northern District of Texas). TI is also a large international corporation: For 2011, it ranked 175 in the Fortune 500; had manufacturing, design, or sales operations in more than 35 countries; and generated

$ 13.7 billion in revenue. Given its size, many of the engineers responsible for working on the products accused of violating Carroll's patents are located outside of Dallas: Many are in Tuscan, Arizona, while others are in Bangalore, India and Erlangen, Germany.

Carroll brought this lawsuit in the Middle District of Alabama, and, in particular, in the district's Northern Division, whose seat is Montgomery. TI seeks a transfer to the Northern District of Texas, and in particular, to the Dallas Division. Therefore, the venue dispute here is, at bottom, over whether the trial and other proceedings in this case should be in Montgomery or Dallas.

## II.

28 U.S.C. § 1404(a) authorizes a district court to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice." Because

3

federal courts normally afford deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). A district court has "broad discretion in weighing the conflicting arguments as to venue," England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988), but must engage in an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

In resolving a § 1404(a) motion, the court first determines whether the action could have originally been brought in the proposed district of transfer and, if so, the court then weighs the convenience of the parties and considers interests of justice to determine whether a transfer is appropriate. C.M.B. Foods, Inc. v. Corral of Md. Ga., 396 F. Supp.2d 1283, 1286 (M.D. Ala. 2005)

4

(Thompson, J.). Here, there is no question that this case could have been originally brought in Dallas.

Accordingly, the court's inquiry focuses solely on whether the balance of justice and convenience favors transfer. In making this determination, courts generally consider a number of non-exhaustive factors, including the following: the plaintiff's initial choice of forum; the convenience of the parties; the relative means of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency. See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); Fedonczak v. State Farm Mut. Auto. Ins. Co., 2010 WL 1856080, at *2 (M.D. Ala. May 4, 2010) (Fuller, C.J.); C.M.B. Foods, 396 F. Supp. 2d at 1286-87.

The Plaintiff's Choice of Forum. Carroll resides in the venue chosen for litigation: the Northern Division of

5

the Middle District of Alabama. Indeed, Camp Hill, his home, is only about 65 miles from Montgomery, where his case, if not transferred, will be tried. His choice of venue is "entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." Neil Bros. Ltd., v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 333 (E.D. N.Y. 2006) (Spatt, J.); see Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.") (internal quotes and citation omitted).[1]

---

1.   This case, therefore, can be distinguished from those where, because "a plaintiff brings its charges in a venue that is not its home forum," the plaintiff's "choice of forum is entitled to less deference." In re Link A Media Devices Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011); see also RSUI Indem. Co. v. Sealy Realty Co., Inc., 2012 WL 235520, at *3 (M.D. Ala. Jan. 25, 2012) (Thompson, J.) (distinguishing between instances where a "local entity seek[s] to litigate th[e] case on its home turf" or where the forum has some connection to the dispute and thus where "considerable deference would be due" and those instances where the plaintiff brings "suit outside its home forum and in a district with no connection to the dispute").

**Convenience and Relative Means of the Parties**. Taking the relative means and convenience of the parties together, the court cannot conclude that these factors weigh in favor of a transfer. On the one hand, while Carroll does not argue that a transfer to Dallas would create a **financial** burden (perhaps in part because his counsel are located in California and would have to travel regardless of whether the litigation venue were in Montgomery or Dallas), he does contend that he would be **personally** inconvenienced to a great extent. Carroll is 74 years old, and, in the past year, has been given radiation treatment for cancer. While his cancer is now in remission, he must follow-up quarterly to monitor his cancer. He also takes care of his adult son's family (a wife and two children), due to his son's recent serious injury. Because of these circumstances, Carroll has left the State of Alabama only once in the past three years. The court, therefore, finds factually not only that Montgomery is more convenient for Carroll but also that

7

forcing him to travel to Dallas to pursue this litigation, which may include several in-court pretrial proceedings as well as trial, would be significantly burdensome.

On the other hand, with its principal place of business in Dallas and its counsel based there, litigating the case in the Northern District of Texas is more convenient for TI. Nevertheless, the court is unaware of any circumstance that would make litigating this case in Alabama significantly burdensome for TI.

On balance, therefore, given the substantial personal inconvenience for Carroll to litigate this case in Texas and given that the parties' relative financial means do not point one way or the other, the court finds that the convenience and means of the parties weigh significantly against transfer. See Kolodziej v. Mason, 2011 WL 2009467, at *7 (N.D. Ga. May 20, 2011) (Carnes, C.J.) ("When evaluating the relative convenience of the parties, [t]ransfer should be denied if it would merely

shift inconvenience from one party to another.") (internal quotes and citations omitted).

**Convenience of Witnesses**. The "convenience for and cost of attendance of witnesses," In re Genentech, Inc., 566 F.3d 1338, 1343 (Fed. Cir. 2009), are an important factor and, for nonparty witnesses, are sometimes dubbed the single most important factor in determining whether the transfer of venue is proper. See, e.g., LaPenna v. Cooper Tire & Rubber Co., 2011 WL 2669469, at *5 (M.D. Ala. July 7, 2011) (Fuller, J.). Because this factor may be so important, some courts view it as helpful if the party seeking transfer "clearly specif[ies] the ... witnesses to be called and ... make[s] a general statement of what their testimony will cover." Neil Bros., 425 F. Supp. 2d at 329. After that, the reasoning continues, a district court may be able to "assess the relevance and materiality of the information the witness may provide." Genentech, 566 F.3d at 1343.

9

In any event, a court "should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." <u>Neil Bros.</u>, 425 F. Supp. 2d at 329 (internal quotes and citation omitted); <u>see also</u> <u>Dale v. United States</u>, ___ F. Supp. 2d ___, 2012 WL 695591, at *1 (M.D. Fla. Mar. 5, 2012) (Presnell, J.) (noting that the court "will not simply 'tally the number of witnesses' in each prospective forum to determine which is more convenient"); <u>Microspherix LLC v. Biocompatibles, Inc.</u>, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (Moore, J.) ("In assessing the convenience of the witnesses, the mere length of an individual parties' list of potential witnesses is not of great significance.).[2]

---

2.  While a movant is not required to identify "key" witnesses, <u>Genentech</u>, 566 F.3d at 1343-44, doing so may significantly aid a defendant's efforts in meeting its burden of demonstrating that venue should be transferred, and courts frequently focus on such "key witnesses." <u>See, e.g.</u>, <u>Dale</u>, 2012 WL 695591, at *1; <u>Kolodziej</u>, 2011 WL 2009467, at *7 ("The convenience of the witnesses is one of the most important factors in evaluating a motion to transfer venue, with the main focus on "key (continued...)

And the term witnesses may have two different practical meanings. First, there are the witnesses who may have any conceivable knowledge about any conceivable issue in the litigation. A lawyer's initial list of these witnesses may therefore go on for pages. Prior to trial, these witnesses are usually questioned informally and, if they have significant material information, questioned formally (through depositions, affidavits, etc.) in the communities where they live or work. For the most part, the trial venue does raise a convenience issue for them.[3] Second, there are witnesses who are likely to be called at trial and for whom the convenience of the trial venue can be an issue. This list comes from the first group and can often end up being substantially smaller, often fewer than a handful even though the first group was quite large. On a transfer motion, all that the court is asking

---

2(...continued)
witnesses.").

3.   To be sure, pretrial discovery disputes involving witnesses do arise.  But these disputes rarely require a witness's appearance at court.

the parties to do is to make an educated guess as to the size of the second group, that is, a guess with some articulable reason to back it up.

Further, as stated, courts often distinguish between party witnesses and nonparty witnesses: "Party witnesses are the parties themselves"; they are often viewed as "more willing to testify in a different forum," a view which often does not apply to non-party witnesses. Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004) (Thrash, J.). Employees of a company, though not technically parties, may be so closely aligned with their company that they may be viewed as "party witnesses," see, e.g., Merial Ltd. v. Intervet, Inc., 2010 WL 942294, at *2 (M.D. Ga. Mar. 11, 2010) (Land, J.); Ramsey, 323 F. Supp. 2d at 1354-56; Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (Crone, M.J.).[4] Accordingly,

---

4. Alternatively, some courts view employee witnesses as "non-party" witnesses, but treat them in the same fashion as party witnesses: the significance of
(continued...)

the convenience of a nonparty witness may hold more
weight than that of a party witness. <u>ASD Specialty
Healthcare, Inc. v. Letzer</u>, 2010 WL 2952573, at *4 (M.D.
Ala. July 26, 2010) (Watkins, J.) ("The convenience of
non-party witnesses receives considerably more weight
than the convenience of parties or party-witnesses.");
<u>Kolodziej</u>, 2011 WL 20009467, at *7.

Here, the only nonparty witnesses expressly
identified as such are the attorneys who prosecuted the
patents-in-suit before the U.S. Patent and Trademark
Office and who are located in Atlanta, Georgia. At just
over 160 miles and a two-to-three hour drive for theses
witnesses, Montgomery is much closer and easier to access
than Dallas, which is almost 800 miles away and would

---

    4(...continued)
these witnesses' convenience is "diminished when the
witnesses, although in another district, are employees of
a party and their presence at trial can be obtained by
that party." <u>Trinity Christian Center of Santa Ana, Inc.
v. New Frontier Media, Inc.</u>, 761 F. Supp. 2d 1322, 1327
(M.D. Fla. 2010) (Wilson, M.J.); <u>see also</u> <u>Bennett
Engineering Group, Inc. v. Ashe Industries, Inc.</u>, 2011 WL
836988, at *2 (M.D. Fla. 2011) (Antoon, J.).

almost certainly require these witnesses to fly and most
likely stay over night even for a one-day trip. Thus,
this factor tips heavily in favor of keeping this suit in
the Middle District of Alabama.[5]

As for party witnesses, on Carroll's side the only
witness actually identified, and almost guaranteed to
testify at trial, will be Carroll himself, who, as
stated, resides in the Middle District of Alabama and
who, because of his personal and family circumstances,
has been able to leave the State only once in the last
three years. For Carroll, therefore, trial in Dallas
would pose a substantial hardship.

TI has pointed to scores of employee-engineers
scattered about the globe, who are closely aligned with
the company in this action and whom the court will

---

5. Given that no other nonparty witnesses have been
identified and the fact that the Atlanta attorneys are
more than 100 miles from both this court (in Montgomery)
and the transferee venue (in Dallas), no nonparty witness
may be compelled through either court's subpoena power to
attend the hearing. See Fed. R. Civ. P. 45(b)(2)(C). This
factor is neutral.

14

therefore treat as "party witnesses."  However, and more
significantly, TI has not identified actual witnesses but
rather has pointed to groups of its engineers, their
work, and their general locations. (However, regardless
as to whether these employee-engineers are treated as
party or non-party witnesses, the outcome here would be
the same. The question, discussed later, of which and how
many of these employees are likely trial witnesses
applies regardless of whether they are treated as party
or non-party witnesses.)

Specifically, based upon numbers from the fourth
quarter of fiscal-year 2011, TI declares that, of the
approximately 80 engineers in the High Speed ADC product
group (covering 20 of the 23 accused products),
approximately 45 are in Dallas and 35 are in India. TI
goes on to state that, for those in Dallas, the group of
engineers "control[s] the technical support, marketing,
business management, and product line management for the
High Speed ADC accused products and the design and
developmental testing for a portion of the High Speed ADC

15

Accused Products," TI Br. 3 (Doc. No. 19, at 3), and the
group of 35 engineers in Bangalore "ha[s] responsibility
for the design and developmental testing for a portion
of" the High Speed ADC accused products. Venable Decl. 3
(Doc. No. 19-1, at 4). However, after making these broad
and vague statements, TI has not gone the further step of
helping the court to make an educated guess of which and
how many of these employees will be likely trial
witnesses. For example, it has not provided the
information each, or even some, of these engineers might
have and what TI anticipates any particular engineer
might testify about regarding the accused products. TI
has not identified which of these individuals can testify
as to the actual products at issue in this case, or even
whether it will likely be all of them or only a few; TI
has not specified which "portion" of the products any
particular engineer will have design and development
information about; nor has TI clarified which of these
engineers were even at the plant when the relevant
products were designed. Cf. Baker v. RBS Wordplay, Inc.,

16

2010 WL 4065074, at *4 n.8 (S.D. Ala. Oct. 15, 2010)
(Steele, C.J.) (explaining that, when examining the
convenience of the witnesses, "courts place a premium on
specific information concerning the identity and location
of the affected witnesses, and the significance of their
potential testimony"). The fact that a cadre of 80
engineers works in a product group does not, on the basis
of that fact alone, necessarily mean that all of them are
likely trial witnesses with material and reasonably non-
duplicative knowledge[6] about the products at issue here.[7]
Accordingly, for the High Speed ADC products, the court

------

        6.   The court refers to witnesses with reasonably
non-duplicative,  rather  than  just  non-duplicative,
knowledge because a party may sometimes want to present
duplicative witnesses on a hotly disputed or close
factual use.

        7.   In its reply brief, TI seems to suggest, at
times, that all members of these groups have this
knowledge.  The declaration in support of TI's motion,
however, does not aver that all of these engineers
possess such knowledge; it speaks in terms of "groups,"
with possible or potential knowledge, and does not allege
that all engineers have actual knowledge relevant to the
products at issue in this suit.  See Venable Decl. 3-5
(Doc. No. 19-1, at 4-6).

cannot adequately determine which or how many engineers
are likely trial witnesses.

The same problem applies to engineers identified as
potential witnesses from TI's Precision ADC group
(covering the remaining three of the 23 accused
products). Of this group, only 10 of 65 were located in
Dallas as of the fourth quarter of 2011, with 28 others
in Arizona and the remainder in either India or Germany.
As before, TI's information with regard to these
engineers' potential testimony is somewhat vague and
over-inclusive: "These individuals are part of teams
that are responsible for the development of" the
Precision ADC accused products, and these "teams" are
responsible for developing one of the three products and
"potentially" the other two in the Precision ADC group.
TI Br. 4-5 (Doc. No. 19, at 4-5). Especially in the
context of a company as large and dispersed as TI, a
broad list of engineers in groups at various facilities
(some of whom may have no knowledge of material facts
relevant to this case) that is unaccompanied by any means

18

to determine which or how many are likely witnesses
leaves the court wanting in its ability to analyze truly
the actual interests at stake and thus whether the
convenience-of-witnesses factor weighs in favor of
transfer. Cf. American Standard, Inc. v. Bendix Corp.,
487 F. Supp. 254, 262 (W.D. Mo. 1980) (Becker, J.) ("[I]f
the party moving for transfer under § 1404(a) merely
makes a general allegation that witnesses will be
necessary, without identifying those necessary witnesses
and indicating what their testimony at trial will be, the
motion for transfer based on convenience of witnesses
will be denied.").

To be sure, TI's statement that some
"engineers/witnesses with knowledge of the operative
facts are undeniably centered in Dallas" may be true.
Reply Br. 3 (Doc. No. 26-1, at 4). The problem, however,
as stated, is that TI's identification of only "groups of
engineers" makes it impossible to determine how many of
these engineers are reasonably likely to be witnesses and
how many are located in Dallas, and therefore makes it

19

impossible to evaluate the convenience factor. A specific
showing of reasonably likely inconvenience would be more
helpful here. See Electronic Transaction Network v. Katz,
734 F. Supp. 492, 501-02 (N.D. Ga. 1989) (Forrester, J.).

Moreover, knowing which and how many of the employees
identified by TI are likely trial witnesses is important
not just to whether Carroll should have to go to Dallas
or TI's Dallas employees should have to come to
Montgomery. For one, in relative terms, the travel
inconvenience confronted by international witnesses could
be significantly different from that confronted by
domestic witnesses, and, in particular, that confronted
by domestic witnesses located near one of the two
potential venues. Because international witnesses will
have to travel a long distance regardless, the difference
for them between Montgomery and Dallas may be marginal.
Cf. Genentech, 566 F.3d at 1334 ("The witnesses from
Europe will be required to travel a significant distance
no matter where they testify."); Neil Bros., 425 F. Supp.
2d at 330 (concluding that "it is only slightly less

20

convenient to travel from the United Kingdom to New York than it is to travel from the United Kingdom to Tennessee."). By contrast, the relative burden imposed on domestic witnesses by having to travel to a different domestic forum (as plaintiff Carroll would have to do if the court were to grant the transfer motion or as TI's Dallas-based employee-witnesses would have to do if the motion were denied) can be significant.

Thus, this relative-burden viewpoint, which looks at the additional burden imposed by traveling to a forum by witnesses that will have to travel significant distances regardless and compares that against the burden on those who may or may not have to travel at all, figures prominently in the court's analysis. However, as mentioned, TI does not fully address how many of its engineers are likely trial witnesses who will have to travel internationally regardless (those in India and Germany); who will have to travel domestically regardless (those in Arizona); and who will not have to travel at all if there is a transfer (those in Dallas).

To be sure, from TI's identification of witness groups, the court can get some impression (though rooted more in possibility than probability) of the burden TI may have to bear if the case is tried in Montgomery, but the court must also be sensitive to two other things. First, reliance on broad group identifications (without any culling down to those who are reasonably likely to testify) can come very close to mere head-counting, which could put a large party with many employees at a significant advantage over a small party with few or no employees. Second, this court is confronted with specific evidence of the significant burden that a Dallas trial would pose to Carroll. As stated, because of his personal and family circumstances, Carroll has been able to leave Alabama only once in the last three years. Carroll's specific evidence of a substantial burden is more compelling than the generalized, possibility-based feeling that TI's evidence gives, especially given that  the number of likely witnesses with relevant, material, and

22

reasonably non-duplicative information might very well still end up quite small.

The court would emphasize that it is not saying that a party must identify with certainty all of its potential witnesses, nor even that a party must present to the court a full summary of the testimony of all its witnesses, for litigation at the motion-to-transfer stage is often much too early in the game to ask that. What the court is saying is that the parties must help it pierce through broad, indefinite contentions about what witnesses may be called so that the court may make its own educated guess, as best it can, as to what witnesses are likely to be called. Courts that have suggested that parties provide summaries of witness testimony have, obviously, used that requirement to help make that guess, especially when a party has essentially dumped on the court a list all or a part of its company phone book. Requiring such summaries may not be the only means to reach that goal. But, absent

23

such summaries, parties must make some effort through
other means to help the court.[8]

Here, this court sincerely doubts that TI will call
all of the many witnesses from the groups it has
identified. Indeed, the court is certain that the number
of witnesses TI will call will more likely than not be
much, much smaller than the two groups TI has identified.
But, how much smaller, TI has offered no help in
determining.

In sum, for witnesses in general (both party and
nonparty), the court cannot say that TI has adequately
demonstrated that Dallas is the more convenient forum.
Without question, a Montgomery trial would be more
convenient for the Atlanta witnesses. And, more
importantly, the burden that a Montgomery trial would pose

------

8.   Marshaling such evidence, even at the early stage
of litigation, should not be that difficult for attorneys
who have years of patent-litigation experience.  Early
on, and although they be able to say for sure, such
attorneys should have some idea of how factually complex
and difficult a case is likely to be and how many
witnesses are likely to be called at trial.

to TI is too indeterminate and non-specific to warrant a transfer in the face of the specific and substantial burden that a Dallas trial would pose to Carroll.

Access to Evidence. The location of relevant evidence and documents weighs in favor of transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" Genentech, 566 F.3d at 1345 (quoting Neil Bros., 425 F. Supp. 2d at 330). Accordingly, as TI argues, much of the evidence will be located in Dallas, where TI has its hub of operations, or either its offices in Tuscan, Bangalore, or Erlangen. TI acknowledges that a significant amount of documentary evidence could be located in any of these three non-Dallas locations, but argues that, even if the evidence is located outside of Dallas, given its intra-company network, many of the documents can be securely and more conveniently accessed from Dallas.

25

At the same time, however, the court recognizes that, in the same way that technology will enable TI to access documents in foreign locations from Dallas, technology has also reduced the burden that will be imposed by litigating in the current forum; indeed, if needed for trial, many documents can be sent electronically at no burden and be printed, as they would have to be regardless, locally. Still, despite technology, the incremental burden based upon the location of the documents remains cognizable. Genentech, 566 F.3d at 1346. In the end, though this factor, as stated, weighs in favor of transfer and though technology has not made this factor a complete nullity, it changes the analysis "only minimally." Neil Bros., 425 F. Supp. 2d at 325; see also Polyform A.G.P. Inc. v. Airlite Plastics, Co., 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15, 2010) (Land, J.) (agreeing that the physical location of relevant documents "is not particularly significant given the widespread use of electronic document production"); but see Microspherix, 2012 WL 243764, at *3 ("In a world with fax machines, copy

machines, email, overnight shipping, and mobile phones
that can scan and send documents, the physical location
of documents is irrelevant.").

Locus of Operative Facts.  In patent-infringement
cases, the "'locus of operative facts usually lies where
the allegedly infringing product was designed, developed,
and produced.'"  Neil Bros., 425 F. Supp. 2d at 331; see
Medien Patent Verwaltung AG v. Warner Bros. Entm't, Inc.,
749 F. Supp. 2d 188, 191-92 (S.D. N.Y. 2010) (Cedarbaum,
J.) ("'Operative facts in a patent infringement action
include facts relating to the design, development, and
production of a patented product.'" (quoting Fuji Photo
Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370,
375 (S.D.N.Y. 2006) (McMahon, J.)); Invivo Research, Inc.
v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433,
439 (S.D.N.Y. 2000) (Sweet, J.) (same); Arete Power, Inc.
v. Beacon Power Corp., 2008 WL 508477, at *5 (N.D. Cal.
2008) (Brazil, M.J.) (same). This is so because, in a
patent-infringement case, the "design, development,
marketing, manufacture, and sale" of the accused products

27

will often be the primary issues for litigation. <u>Polyform</u>,
2010 WL 4068603, at *5; <u>see</u> <u>id</u>. at *5 & n.2 (explaining
that the locus of facts or "center of gravity" for a
patent-infringement case is where the accused product was
designed and developed). This factor weighs in favor of
transfer. While it is true that Carroll designed his
patents in this district, none of the design, manufacture,
or development of any of the 23 accused products took
place in Montgomery. Instead, all of it occurred in TI's
offices, the largest of which is in Dallas. Thus, even
though not all of the planning and development took place
in Dallas (some took place in Arizona, Germany, and
India), the locus of facts appears to be more associated
with Texas than Alabama. <u>Cf</u>. <u>Pergo, Inc. v. Shaw</u>
<u>Industries, Inc.</u>, 2003 WL 24129779, at *3 (N.D. Ga. Sept.
16, 2003) (Martin, J.) ("For patent infringement actions,
the center of the accused activity is the locus of
operative facts: 'The trier of fact ought to be as close
as possible to the milieu of the infringing device and the
hub of activity centered around its production.'" (quoting

<u>AMP Incorporated v. Burndy of Midwest, Inc.</u>, 340 F. Supp. 21, 24-25 (N.D. Ill. 1971) (Parsons, J.)).

    <u>Local Interest</u>. Lastly, the court considers the local interest in having this dispute resolved in either Montgomery or Dallas. To analyze this factor, the court considers the "factual connection" the case has between both venues. <u>Fujitsu Ltd. v. Tellabs, Inc.</u>, 639 F. Supp. 2d 761, 769 (E.D. Tex. 2009) (Davis, J.). Here, the local interest in having the case decided at "home" is evenly split. On one hand, there is a clear factual connection to Alabama in that Carroll designed, invented, and registered his patents as a result of his work in Alabama's public universities and while living in this district. In this respect, Alabama is deeply connected to (and invested in) these patents, which makes their vindication, if infringed, a matter of local concern. At the same time, given that, at least in part, TI designed and developed the accused products in Dallas, where TI has its principal place of business, Texas also has an

localized interest in trying the case at home. Id. This factor is neutral.

Balance of Factors. At the end of the day, considering the totality of the circumstances, the court cannot conclude that the case should be transferred to the Dallas. While it is true that the location of documents favors transfer; that some (but not all) of the operative facts do as well; and that some (but certainly far from all) of TI's witnesses are located in Dallas, TI has not met its burden of demonstrating that justice and fairness require a transfer in this case.

Instead, the fact that the trial of this case in Dallas would be extremely difficult for Carroll in light of his and his family's personal circumstances; that the relative means of the parties weighs against transfer; that convenience for the Atlanta attorneys weighs against transfer; that there are local interests at stake; and that there must be some respect for Carroll's choice of forum, all counsel against transfer.

30

Moreover, even assuming that the weighing of factors could be viewed as supporting transfer, it would be "only slightly." Fedonczak, 2010 WL 1856080, at *4. In such a case, and giving deference to Carroll's choice of forum, the court would conclude that transfer would not be in the interest of justice. See id. (citing Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 503 (M.D. Ala. 1994) (Albritton, J.) ("If the transfer would merely shift the inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, the plaintiff's choice of venue should be given deference." (inner quotations omitted)); cf. In re Xoft, Inc., 435 F. App'x 948, 949 (Fed. Cir. 2011) (denying a petition for mandamus seeking a transfer of venue where the district court "found that the plaintiffs' choice of forum favored denying the transfer motion and that additional private interest factors either weighed neutral or slightly favored transfer," and that other "public interest" factors were either neutral or did not "strongly favor transfer").

\*\*\*

Accordingly, it is ORDERED that defendant Texas Instruments, Inc.'s motion to transfer venue (Doc. No. 19) is denied.

DONE, this the 1st day of May, 2012.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE